Alright, our next case is in re Marriage of Jones, 516-0371. Patrick Busquet? Busquet. Alright. And Joseph? Thank you very much. I couldn't read the last name on my sheet. You'll each be given 15 minutes and 5 minutes for rebuttal. So whenever you guys are ready. I'll be keeping time, but she will let you know when we're at 2 minutes and then at 1 minute. Alright. Good morning, your honors. My name is Patrick Busquet and I represent the appellant and petitioner Rick Jones. This case involves the tax liabilities, the appellant Rick Jones and the appellee Dorothy Boos after their divorce. I'll refer to them as Dorothy and Rick just for ease of discussion, but of course no disrespect is meant by that. The case presents itself as sort of a convoluted tax case, but it really isn't. What it is at its heart is a straightforward case of contract interpretation. At the time of their divorce, Rick and Dorothy entered into a marital settlement agreement that contained a number of revisions about how they would split up their assets and liabilities. One key component of that was how they would split the underpaid income tax that they both owed to the IRS for the tax years of 2002 through 2005. And that agreement said that they would split that payment for the underpaid taxes 50-50. The marital settlement agreement and a couple of subsequent orders from back in 2009 clarified the marital settlement agreement and also made clear that Dorothy and Rick would split not only the payment that related to underpaid taxes, but any future tax liability for those tax years including unpaid taxes, interest, and penalties 50-50. Unless Dorothy was able to successfully prove that she was an innocent spouse for the IRS and ultimately the tax court, or otherwise show that Rick was obligated for more of the tax liability than she was. Counsel, this case relies in large part on the rulings of the tax court. You've raised an issue. What makes this a final judgment? How does this court have jurisdiction? I know the judge certified it, but I want to hear why you think this... Does that give us finality on this particular issue? Or does it have to go back to trial court and they're going to have to determine penalties or interest? Yeah, I think it's important to determine, I think, to discuss exactly what's being challenged here, exactly what the trial court held. The trial court had two parts to it. The second part, which isn't really relevant because I don't think anyone's disputing that, is that both parties are jointly liable for the underpaid taxes and interest fine. It's the trial court's summary judgment ruling that the husband, and the husband alone, is liable for the fraud penalty that is before this court. That is what the trial court held, and that is an issue that sort of determines where we go from here. The husband, if Rick is 100 percent liable for the civil fraud penalty, then the only thing left to determine is the amount of that civil fraud penalty. There's no issue as to how it's split between the parties. There's a whole host of issues that will need to be decided if the court remands and finds that, as we suggest based upon the tax court final decision, which it's agreed to, that neither party is liable for the civil fraud penalty, or at minimum that decision, left the parties on equal footing such that they have to, that the trial court has to go back to the marital settlement agreement and find that each party is liable for 50 percent of everything. That's what was contemplated by the parties back in 2009 when they signed that agreement, and the only way that that was ever going to change was if the tax court ultimately decided that either Dorothy was not an innocent spouse, or that she was an innocent spouse, rather, or that one party or the other owed more. And that's not what happened. The court said she's not an innocent spouse and there's no fraud penalties, and it makes absolutely no differential between Dorothy and Rick on that point. I hope that answers your question. I mean, it's a threshold issue. In fact, the trial judge was very concerned about making any further rulings or proceeding in this case with the open question as to whether Mr. Young was going to be liable for the civil fraud penalty at all. So that's where we are, and that's why it's a distinct issue that needs to be resolved. I'm still thinking about this court's jurisdiction over the issue. I guess the second question is, and I'm sorry to cut into you at the outset, but ultimately what relief are you seeking? Well, we're seeking, we're asking the court to overrule the determination that Rick was liable for 100 percent of the civil fraud penalty. That's not what this order says. It says that there's no civil fraud penalty. So we go back to the circuit court, I guess, and have to figure out how the parties are going to deal with the tax liability. And I think that's fairly simple, is it says that each party pursuant to the marital settlement agreement is liable for one half of the total. And so I think maybe you're getting at there's this question of, you know, what relief would Rick be able to get if he went back to the trial court? Because, you know, it isn't essentially the position we're taking that nobody owes any fraud penalty, and how can you get half of nothing? Is that kind of what you're getting at? Well, that is an issue. Okay. Well, I think that that's a significant question. And the way that that plays out is that this fraud penalty is a $1.5 million penalty that Rick Jones paid back in 2009. Dorothy had the obligation under the marital settlement agreement to pay that same $1.5 million, half of that $1.5 million penalty for which they were both liable at that point at that time, and she never did. And so she pursued a separate action to try and be declared an innocent spouse and to try to be declared not a fraud. And ultimately she settled that action and came out with this order, leaving no fraud penalty. When that decision came down, Rick filed this petition, you know, seeking a civil contempt order because Dorothy, you know, still hadn't paid her portion of the penalties, and suggested that because this court order says that there's no civil fraud penalty, that the two parties should jointly file a request for a refund from the IRS. And so that was not done to my knowledge. You know, it certainly could potentially still be done, but the issue is what do you do? None of that is before this court. Whether Rick or whether Dorothy are entitled to a refund is not before this court. What's before this court is whether this agreement, the four corners of this agreed upon decision require that each party pay 50% of their total tax liability. That's the only thing, really, that's before the court. I can envision a situation where, you know, one party to the, you know, either Dorothy or Rick fail to appeal or seek a refund in the IRS, and one or more of them, you know, doesn't get a full refund. Well, what's the remedy then? Perhaps one or the other of them would have a remedy against the other to recover the portion that he paid, that he or she paid, that they should have been able to get back from the IRS but failed to do so. But none of that's before the court. What's before the court is what does this document mean, and does it mean what we say, that there's no fraud penalty, or does it mean what they say, that there's no fraud penalty for, as they say, no fraud penalty for Dorothy only. So another issue that I think needs to be addressed. Just so you know, you're about halfway through your talk. Thank you. Counsel for Dorothy has brought up a number of cases that suggest that you can look beyond the four corners of the document in order to determine the party's intent. We said before in our reply brief that those cases that they rely on, they really just draw a little bit of a decision from the Illinois Supreme Court in a case called Allo v. Lowe, where the court in that decision said, when you are considering a court's decree, a court's order, you can consider, you know, the pleadings that led to it, the issues that led to it, in order to determine the effect of the order. That case had nothing to do with a consent order. It was not any sort of stipulated order. And the cases that thereafter relied on it just took that language about orders and put it into their analysis. But if you look at the decisions that this Court has made, including the 1999 case of Flora Bank, the Court has held that if there's no ambiguity, the intent of the parties should be derived from the language of the consent judgment alone. Absent ambiguity in the terms of the consent judgment, the intent of the parties must be ascertained solely from the instrument itself, and extrinsic evidence will not be admitted. And that's what's interesting here, is because the trial judge found that this order was clear. It was clear that it says no fraud penalties, and yet the Court went beyond the document itself, in fact, beyond the record entirely, and relied on a plea agreement to find that, well, because he signed this plea agreement, he's liable for the full amount of the fraud penalty. But that's not what the order says at all. That's not what the parties agreed to. And it's certainly not appropriate for the judge to have looked outside of this document, absent a finding that this document was ambiguous. And, you know, it's not. It doesn't – it's not wishy-washy. I mean, each of these sentences is fairly clear. It mentions the deficiencies that the parties had from 2003 to 2004 to 2005. No reference to the party, so it presumably applies to both parties. It says that there are no penalties. That's the civil fraud penalty statute. There are no penalties from 2003 to 2004 and 2005 under the provisions of IRC 663. No reference to parties, presumably applies to both parties. The petitioner, the petitioner, why is not entitled to relief under IRC 6015 or with respect to her income tax level in 2003 to 2004 to 2005? That's the innocent spouse claim that she made. So it says there are tax deficiencies. Those are overjoined. There's no penalties. And why is not entitled to innocent spouse relief? It couldn't be clearer what was done there. Now, my opponent takes the position that, well, you know, Dorothy didn't really gain anything from this and that not everybody had a consent. Rick is the only one that came out ahead at this deal, and that's absolutely not true. Dorothy had in the tax court, I mean in the IRS rather, received a final determination that she was fraudulent, that she was not an innocent spouse, and that she was liable for the civil fraud penalties. She challenged that in the tax court. She challenged both the civil fraud penalty and her status as an innocent spouse. Rick intervened in that because he wanted a chance to show that absolutely she was part of the fraud. And that was his absolute right to intervene, be a party in that action, and prove that she was fraudulent. Dorothy, presumably to avoid being labeled a fraud, which is something that I think most people would want to avoid, particularly when you're talking about a public record stating that you defrauded the federal government, decided that as long as she could get rid of the penalties, then she could go ahead and agree to her status as not an innocent spouse and pay half of the underpaid taxes. The IRS certainly had every incentive to, they wanted to finish the litigation basically. It's an expense. If there's uncertainty with trial, they presumably wanted to end the litigation. And Rick wanted to get rid of his own liability for civil fraud. And the IRS had absolutely every right to throw that in there. Even though Rick's liability for civil fraud wasn't ever an issue in the tax court, the IRS had every right to include that as part of the relief. Because the IRS, as the case law says, is free to settle the case in any manner, not violative of the law or public policy, regardless of what the result might have been to have the parties gone to trial. And that's the Miller-Tavakursh case cited in our brief.  And you can throw in other claims if you want to. The IRS was a party to this agreement, the stipulation agreement. Both Rick and Dorothy were parties to it. They all had counsel review it. They knew how to make one of these provisions apply only to Dorothy. It chose not to do so. And this is the document that's left. So I think the key point here is what the judge did. The judge went beyond this document, went beyond the record entirely, and found that husband only, that Rick only, was liable for the civil fraud penalty. As a matter of law, he wasn't entitled to do that, absent the finding of ambiguity. He was certainly never entitled to go outside of the record entirely. The court needs to reverse the circuit court's decision, apply this document as it's written, if the law requires, and remain on the case for further proceedings. I'll reserve the rest of my time. Thank you. Thank you. May it please the Court, Counselors. My name is Joe Martineau. I'm Louis Rice in St. Louis. I represent the respondent, Dorothy Bowes, in this manner. I want to put this case in the proper perspective. If you have read the brief of the petitioner, appellant, you'll see that there are two words that appear frequently. Those words are equal footing. They appear at least 15 times in that briefing. But those words, Your Honors, do not exist anywhere in either the divorce court orders or the tax court decision. And the words are very misleading regarding the issues before this Court. What are the material facts? A husband was convicted of criminal tax evasion related to the underpayment of taxes for the years 2003 to 2004 and in 2005. Wife was never charged. Husband never challenged, nor could he, and that's important, his liability for the underpaid taxes, interest, and resulting penalty. He effectively admits that in his reply brief when he admits he did not seek affirmative relief from the tax court but only sought to disprove wife's request for innocent spouse relief and prove her liability for civil fraud penalties. Now let's look at the divorce court orders. There's only one that really matters here, and that's the last one, dated September 24, 2009, and the parties essentially agreed on what the terms of that order were. The order said that the parties would each pay half of their joint tax liability for 2003 and 2005 unless otherwise determined based on wife's tax court protest. And what does the tax court decision say? The tax court decision, the effect of which the parties have a disagreement about to some extent, denied any relief to the wife as an innocent spouse. She's liable for the taxes. She's liable for the underpaid taxes and the interest but also said there are no penalties. And that's where we have some disagreement. But this court needs to look no further than that to resolve the first issue that's involved in husband's appeal. Husband argues that the tax court decision in saying there was no penalty relieved both he and her of the penalty. We don't agree as we'll discuss in a moment. But, as we point out in our brief, if that is the case, then the joint tax liability of husband and wife is limited to the underpaid taxes and not the penalty. That's the clear import of what they say. What does your client care if there are penalties against the husband or not? I'm sorry? What does your client care if there's penalties against the husband or not? Well, she cares because part of the settlement documents were that funds were paid for marital accounts to each having 50% interest in it. She cares because $270,000 of the money that she's entitled to went to pay the penalty that we say only the husband is liable for. So there's the relevance. And that really pertains to the second issue. I mean, because if you read their brief, they're not limiting their claim to we don't have to reimburse money. They're saying she has to reimburse us for 50% of the penalty. And she paid part of the penalty, and she claims that she's entitled to reimbursement of that portion which she paid. So that's the issue that is of significance to wife, Your Honor. I hope I've answered your question. So if that's the case, if neither husband nor wife are liable for the penalty, then the joint tax liability of husband and wife is limited to the underpaid taxes. And wife, as I just said, has already paid more than half of that. She's paid $270,000 more than that. She owes husband nothing. Husband, in his brief, grossly distorts the divorce court order by suggesting that wife must compensate him for payment of a penalty which he says both were relieved of. And the tax court said, according to him, that neither was liable for it. Nowhere did the divorce court say that wife was liable for payment of one-half of what had been paid towards taxes. It said that she would be liable for payment of one-half of the joint tax liability as determined by the tax court, which is just, according to husband, I only owe half the taxes. You only owe half the taxes. Neither one of us owes any penalty. We don't agree with that, and we think wife is entitled to reimbursement of the amount that she paid towards the penalty, and I'll get to that right now. So resolution of the first point on appeal resolves husband's claim that wife would reimburse him for half of the amounts he paid over and above the underpaid taxes. But as I just said, wife paid approximately $270,000 over and above her one-half portion of the underpaid taxes and interest, and that was applied towards the penalty. The divorce court's order clearly provided that wife would reimburse, be reimbursed for any overpayment of the tax liability depending upon the outcome of the tax protest. Based on that order and the tax court decision, the court below, Judge Rigorelli, held that both husband and wife were liable for one-half of the underpaid taxes and interest, but that husband would be liable solely for the penalty. This means that husband should reimburse wife the $270,000, although that issue was never really resolved in the trial court. And resolution of this second issue, the reimbursement issue, depends upon the interpretation of the tax court decision in conjunction with the divorce court order. As already discussed, husband contends that saying there are no penalties, by saying there are no penalties, both he and wife were absolved. But at the same time, he concedes, as he must, and I think Mr. Bousquet just did that in his presentation, that he had already been determined liable for the penalty. He says he intervened in the tax court. The wife files the petition for innocent spouse relief. Husband has a wife to intervene. He intervened for the purpose of disproving her request for innocent spouse relief, which the parties agreed she wasn't an innocent spouse in the tax court decision, and to prove her liability for civil fraud penalties. But there are no civil fraud penalties. The notice of filing of petition and right to intervene, which is in the record, that's a notice that goes to the husband when a wife files an innocent spouse claim. That notice is very clear. The husband's right to intervene is limited to challenging her claim to be relieved of liability, not his. And as we point out in our brief, that is the law. That is the tax law. That is unanswered in their brief, by the way. Wife agrees that her innocent spouse claim to be free of liability for the underpaid tax as an interest was denied. She's liable for the underpaid tax as an interest. We agree with that. And it cannot be disputed that the tax court decision clearly says there are no penalties. It is divorce or logic, reality, or due consideration of the nature of the tax court proceedings to suggest that this means that anyone other than the wife was relieved of the penalty. And certainly the tax court decision relieves someone of the penalty. In recognizing that only the wife was relieved of the penalty under the tax court decision, Judge Mangarelli's law was right. In considering the issue, you must look at the nature of the proceedings in the tax court, which involved only wife seeking relief from liability. And as I just said a minute ago, even husband must concede, and he concedes in his refinery, that he intervened not to show that he wasn't liable for taxes and penalties, but to show wife wasn't, to show she wasn't an innocent spouse, to show she was liable for the fraud penalties. He did not intervene to free himself of the fraud penalties, and he agreed to a decision that said there are no penalties. Because husband is not entitled to seek relief for himself, but only to prove wife's liability for the civil fraud penalties, the only logical conclusion is that the no penalty statement applies only to the wife. Now, husband tries to avoid this by asserting the tax court decision must be construed in a vacuum, that it must be based on four-quarters rule. He argues that the tax court decision is unambiguous and shows agreement between the IRS, wife, and he that husband was relieved from penalty as well as wife. As we pointed out in our brief, the cases husband cites in this four-quarters argument do not stand for the proposition that in interpreting the tax court decision, the court is barred, that Judge Mangarelli was barred from considering the nature of the proceedings and the authority which resulted in that decision. While the cases may eschew reliance on the intent of the parties, what they want to do, none suggest, to my knowledge, that in interpreting a consent judgment, a court should disregard the underlying proceedings and the authority of the court from which it emanates. As we pointed out in our brief, the case which they cite, Armour Holdings, and other cases specifically note the consent order is limited to the issues involved in the case and should be so construed. The Coles Department Store case, a Federal Seventh Circuit case which they cite, is of similar import, noting that the agreement reflects resolution of those issues. The consent judgment reflects resolution of those issues that are the subject of litigation. And what was the subject of the tax court litigation? Whether the wife was liable for the taxes as an innocent spouse and whether she was liable for the penalty. If she won and won, she lost on the other. I think there's another problem with Husband's Four Corners argument. Husband provides absolutely no answer to Wife's argument that the tax protest case, the tax court could not have relieved him of the penalty. He was collaterally stopped claiming any relief from the penalty. He had occupied it. And the tax court lacked any jurisdiction, any subject matter jurisdiction whatsoever, to relieve him of the penalty. Because the tax court lacked subject matter jurisdiction to adjudicate anything other than Wife's liability, it could not have relieved Husband any consent order. You can't consent to subject matter jurisdiction. A consent order that Wife was relieved of the penalty, or I'm sorry, that Husband was relieved of the penalty, would not be valid. We submit to the court, Your Honor, that if parts of the consent decree, if you do interpret the way they want you to interpret, it would be invalid under the tax court rules and the tax code. The tax court had no jurisdiction, subject matter jurisdiction, that you would have to separate Husband out from that. It's notable. Nothing in the record shows that Husband has taken any action with the IRS to obtain a refund of the amounts that he paid towards the penalty. Even though he says, I was relieved of the penalty, in his first argument, he's taken no action whatsoever with the IRS that we know of to obtain relief from the penalty. Thank you. Regardless of whether Husband, too, was relieved of the penalty, the joint tax liability, to sum this up, as determined by Wife's tax protest, was that there are no penalties. As such, Wife cannot be liable for any penalty and owes Husband nothing. Because the tax court proceeding could only relieve Wife of the penalty, and because Husband was already exclusively liable for the penalty, and because the tax court lacked jurisdiction to find Husband not liable for the penalty, the lower courts were that Husband is liable for the penalty, but Wife is not, should be affirmed. We believe that the judgment of Judge Mangarelli was absolutely correct under the circumstances, that he understood and reviewed the record carefully, that his holding that Wife is liable to pay the taxes, which she already has, and that Husband is liable for both the taxes and the penalty, should be affirmed by this court. The case should be remanded so that the trial court can determine how much Husband owes Wife for portions of funds that are marital, which are paid to satisfy his liability for the fund. And unless there are any questions, I have concluded my argument. Thank you. Thank you. Thanks, Your Honor. A couple of points. You know, to answer the question you asked, what is Dorothy Kerr? Dorothy Kerr is whether Rick has the penalty, because she knows under the marital settlement agreement, she owes 50-50 of this equal liability. That's what we're talking about today. Counsel brought up that there's nowhere that the marital settlement agreement or the subsequent orders say the words equal footing. But what it does say is, the September 4, 2009 agreements, this is an agreed-upon order as well, but one from the circuit court, says that it's the intent of the parties that each pay one half of the joint tax liability. And joint tax liability, by the way, is defined to include penalties unless otherwise determined based upon a final resolution of the tax protest. So the parties intended to pay half unless it was otherwise determined that one party had to pay more than the other. Equal footing. This doesn't do that. So back in 2009, both parties owed underpaid taxes. They owed interest, and they owed penalties. And Rick paid $1.5 million to that penalty. Dorothy did not. She was required to do so under the marital settlement agreement. She did not do so. Afterwards, unless she's successful in her appeal, she was not, because afterwards, they're both still 50%... They're still at the same level. They both owed the underpaid taxes and interest. Neither of them owed the penalties. So they're still in the same spot and still the same vis-a-vis each other. And so they have to split the liability. Now, real quickly about the potential for a refund. That's interesting, because the marital settlement agreement actually says what the parties are supposed to do. It says, first of all, that we're supposed to pay 50% of everything unless it's determined that we don't have to pay 50%. And it says that in the event we're able to get a refund from the IRS, that will be used to pay outstanding balances. But afterwards, that refund will be split 50-50 as well. And so it absolutely contemplates that, yeah, they may go and get a refund from the IRS, and that's certainly within the party's rights. But it only makes sense, that provision only makes sense if both parties have paid in their 50% share. Otherwise, the part about splitting out 50% of the refund simply doesn't make sense. So what they're asking is for Dorothy to get a refund. Is your client sought a refund? Yes, Your Honor. And I have to take objection to the fact that the case law doesn't say that you have to ignore everything else. Actually, that's exactly what the case law says. When you're talking about a consent judgment, one that's agreed to by the parties, you do, unless there's an ambiguity in the document itself, you do look only to the document. And in fact, the case law says that it's even more strict when you're dealing with a consent judgment than when you're dealing with a contract. Because when you're dealing with a consent judgment, you're talking about the ultimate resolution of a dispute between hostile parties. It's not a couple of parties that are making a deal. It's parties that have every reason to say, oh, that's not what I meant, after it's over. And so that's why, that's exactly why, unless there's an ambiguity, you look to the document and what the parties agreed to. And these parties agreed that there would be no civil procracting and that the parties would both be liable for the underpaid taxes. And just real quickly about the jurisdictional issue, that's a non-starter. They state that he had some sort of obligation to respond to a notice of deficiency. A notice of deficiency was never given to him. It was given to his wife. We explain that in our reply brief. He had no obligation to respond to that. But what he had every right to do was to intervene in her tax court protests and prove that she was not an innocent spouse and prove that she was a fraud. And throughout that process, the IRS still had the bargaining chip of Rick's liability for civil fraud at their disposal. They could do that. Whether he challenged it or not, they could absolutely put that out there as a carrot in order to encourage all the parties to settle. Because if that wasn't out there, Rick would not have settled the tax case and they would have gone to trial. Thank you, Your Honor. Thank you.